[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Roland Dumont appeals a decision of the defendant commissioner of motor vehicles suspending the plaintiff's motor vehicle operator's license. The commissioner acted pursuant to General Statutes § 14-227b upon a finding that the plaintiff failed a chemical test of the alcohol content of his blood after being arrested on a charge of driving while under the influence of alcohol. The plaintiff appeals pursuant to § 4-183. The court finds the issues in favor of the defendant commissioner.
The facts essential to the court's decision are not in dispute and are fully reflected in the record. The plaintiff was stopped on Route I-84 by Connecticut State Police Trooper Richard Piaseczynski. According to the trooper, the plaintiff was operating his vehicle erratically in swerving from an exit lane back into the main roadway.
After the stop, the trooper detected an odor of alcohol on the plaintiff's breath and the plaintiff stated to him that he had been drinking beer.
The trooper administered the Horizontal Gaze Nystagmus test, which the plaintiff failed, in the trooper's opinion. The trooper also administered two other sobriety tests, an alphabet test and a finger counting test, which he claimed the plaintiff failed. The trooper did not administer the walk-turn test or the one leg stand test because the plaintiff told him that he was recovering from ankle and foot injuries that would prevent him from performing those tests. On the basis of the tests he did administer and his observations, the trooper arrested the plaintiff, charging him with drunk driving. The trooper then transported the plaintiff to the Southington Police Department, where he administered two breath tests, using that department's Intoxilyzer 5000 machine. The test results showed blood levels of .132 and .118. CT Page 6561
The plaintiff requested a hearing on the suspension of his license pursuant to General Statutes § 14-227b. Prior to the hearing, the plaintiff's attorney subpoenaed Trooper Piaseczynski, commanding him to appear at the hearing and bring with him the machine used to test the plaintiff's alcohol level as well as a multitude of documents, some of which will be discussed infra.
Trooper Piaseczynski responded to the plaintiff's subpoena and appeared and testified at the hearing. The only item that he brought with him, however, in response to the subpoena, was a log book of drunk driving arrests, which was maintained at his state police headquarters. He testified that all of the other items listed in the subpoena were not within the custody or control of the state police but rather were the property of and in the custody of either the Southington Police Department or the state department of public health and addiction services or some other agency. The plaintiff requested a continuance so that he could pursue the other items, presumably by subpoena directed to the other agencies, but the hearing officer denied the request.
Plaintiff's counsel then conducted a long cross-examination of the trooper covering the initial investigative stop of the plaintiff and the trooper's grounds for determining probable cause for the arrest. Plaintiff's counsel did not cross-examine the trooper extensively concerning the administering of the breath test, claiming he was hampered by the failure of the trooper to bring with him certain manuals that he had subpoenaed. The court notes, in this regard, that the trooper did testify that the machine was "working perfectly fine" and his written report, which was in evidence, states that the "analytical device the intoximeter machine) was certified, analytical device was operated by a certified operator, and analytical device was checked for accuracy in accordance with applicable state regulations."
At the hearing, the plaintiff introduced in evidence the written report of a toxicologist, Brian Pape, Phd. Although Pape was not present to testify, he states in his report the opinion that the machine used to measure the alcohol content of the plaintiff's blood does not give reliable results. Pape's report concluded that "There is a reasonable likelihood Mr. Dumont's true % w BAC was less than 0.100% at the time of his breath tests." CT Page 6562
Following the hearing, the hearing officer rendered a final decision holding that the police had probable cause to arrest the plaintiff, that they did arrest him on the drunk driving charge, that he had been operating a vehicle, and that he had submitted to a test within two hours after operation, which showed the alcohol content of his blood to be above the legal limit. Based on those findings, the hearing officer, acting in behalf of the defendant commissioner, suspended the plaintiff's license.
On appeal, the plaintiff advances a barrage of arguments, which the court addresses separately below.
Probable Cause
The plaintiff contends that the hearing officer erroneously determined that the police had probable cause to arrest him on the drunk driving charge. He bases this argument on the fact that the arresting police officer did not administer all of the recommended field sobriety tests and that he did not follow established procedures for administering the HGN test.
General Statutes § 14-227b requires the motor vehicle department hearing officer to determine, inter alia, "(1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor . . . ." The hearing officer's task, therefore, is to examine the evidence from the viewpoint of the arresting officer. State v. Merritt, 36 Conn. App. 76, 85-86
(1994). The inquiry is whether the police officer, on the basis of the facts within his knowledge at the time, had probable cause to arrest the person.
"In order to establish probable cause it is not necessary to produce a quantum of proof sufficient to establish guilt . . . probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that (a crime) has been committed." State v. Torres, 182 Conn. 176, 189 (1980). "Judicial review of the commissioner's action . . . is very restricted . . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, (the CT Page 6563 court) cannot disturb the conclusion reached by him." Lawrence v.Kozlowski, 171 Conn. 705 (1976).
In the present case, the police officer observed the plaintiff operating his vehicle erratically. When stopped, the police officer smelled the odor of alcohol on the plaintiff's breath. The plaintiff admitted that he had been drinking beer. The plaintiff failed the sobriety tests, in the officer's opinion. The fact that the police officer may not have "gone by the book" in administering the field sobriety tests simply presented the hearing officer with a factual issue to resolve. The court may not disturb the resulting factual finding unless there was no substantial evidence in support. That is not the case here. There was ample evidence to support the finding. SeeKolakowski v. Hadley, 43 Conn. App. 636 (1996).
Expert Evidence
The plaintiff argues that the hearing officer erroneously found that the plaintiff's BAC exceeded the legal limit when he was tested. He bases this argument on the conclusions and opinions of his expert Dr. Pape, which, as noted, were to the effect that the breath machine used to test the plaintiff provided results that were not reliable.
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183 . . . An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule. . . In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part (Citations and internal quotation marks omitted). Briggs v. State EmployeesRetirement Commission, 210 Conn. 214, 217 (1989).
"The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) Newtown v. Keeney, 234 Conn. 312, 319-320
CT Page 6564 (1995), quoting Samperi v. Inlands Wetlands Agency,226 Conn. 579, 587-588 (1993).
In the present case, there was ample substantial evidence, including the live testimony of the police officer who administered the test, that the machine was functioning properly. Furthermore, it appears undisputed that the machine was certified by the department of public health and addiction services, in accordance with state regulations, as a device to be used in such testing. Finally, the court notes that Dr. Pape only submitted a written report. He was not present so that the plaintiff and the hearing officer could fully explore his opinions by direct and cross-examination. Under all of these circumstances, the hearing officer was not in error in relying on the evidence of the test results in determining that the plaintiff's BAC exceeded the legal level.
Constitutional Claims
The plaintiff contends that the statute authorizing suspension of license for drunk driving, § 14-227b, is unconstitutionally vague. He also claims that he was denied due process as a result of the dual role of the hearing officer as both a party to the hearing and as the adjudicator. He offers no convincing authority for these theories, however, and they may not be sustained.
Police Subpoena/Due Process
The plaintiff argues that he was denied due process and that it was an abuse of discretion for the hearing officer to deny a continuance so that he could pursue the evidence that was subpoenaed but not produced at the hearing.
"Hearings before administrative agencies, . . . although informal and conducted without regard to the strict rules of evidence, must be conducted so as not to violate the fundamental rules of natural justice." (Citations and internal quotation marks omitted). Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 536 (1987). "Due process of law requires . . . that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Huck v. Inland Wetlands WatercoursesAgency, supra. See also General Statutes §§ 4-177c and 4-178. CT Page 6565
The court has carefully reviewed the record in this case, including especially the transcript of the lengthy hearing. As noted earlier, the basis of the hearing officer's decision to deny the plaintiff's request for a continuance was that the plaintiff had issued a subpoena only to the state trooper, who did not have possession of most of the items, and had failed to subpoena the items from the Southington police department and the state health department. In effect, the hearing officer laid the blame for the absence of the requested items on the plaintiff, rather than on the police. Was this fair?
There can be no dispute that the plaintiff and his attorney knew, at the time when the attorney issued the subpoena to the state-trooper before the hearing, that the breath tests were administered not at a state police facility but, rather, at the town of Southington police department, using that department's breath machine. The attorney did not, however, issue a subpoena to the Southington police for the machine and its records. Nor did the attorney issue a subpoena to the department of public health and addiction services, which is responsible for certifying machines and machine operators and which, for that reason, is another likely repository of such records, as well as the manual for operating the machine. Even if these facts were not obvious, the most cursory inquiries would have confirmed them. Finally, there is nothing in the record to indicate that the plaintiff, through his attorney, could not easily have subpoenaed all of the normal sources, including the Southington police and the health department, for the evidence that he wished to present at the hearing.
Based on the considerations summarized above, the court concludes that it was not unfair for the hearing officer to hold the plaintiff responsible for issuing all of the subpoenas necessary for gathering the evidence that the plaintiff wished to present. Accordingly, it was not an abuse of the hearing officer's discretion to deny the plaintiff a continuance when it became apparent that he had not done so.
For all of the foregoing reasons, the plaintiff's appeal is dismissed.
MALONEY, J. CT Page 6566